IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BOYD BATTLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  3:13CV196-CSC |
| | ) | (WO) |
| RUSSELL COUNTY, ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

On April 1, 2013, the plaintiff, Boyd Battles ("Battles"), filed this action pursuant to

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title

VII"), 42 U.S.C. §§ 1981 and 1983, and the Fourteenth Amendment to the United States

Constitution, alleging race and gender discrimination and unlawful retaliation in connection

with his employment as a corrections officer at the Russell County Jail.  The court has

jurisdiction of the plaintiff's claims pursuant to its federal question jurisdiction, 28 U.S.C.

§ 1331, and the jurisdictional grant in 42 U.S.C. § 2000e–5.  Pursuant to 28 U.S.C. § 636(c),

the parties have consented to entry of final judgment by the United States Magistrate Judge.

Now pending before the court is the motion to dismiss (Doc. 13) filed by Defendants Russell

County, Alabama, and the Russell County Commission.  After careful review, the court

concludes that the defendant's motion to dismiss should be granted, and the claims against

Defendants Russell County, Alabama, and the Russell County Commission should be

dismissed.

# I.  STANDARD OF REVIEW

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; see also *Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See *Iqbal*, 556 U.S, at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard).  In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, *the* Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 550 U.S. 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## II. Facts

The relevant factual allegations of the amended complaint[1] are as follows:

From February 25, 2011, through March 2, 2012, the Plaintiff, Boyd Battles, a white male, was employed as a corrections officer working within the Russell County Jail. (Doc. 3 ¶¶ 7, 15). Battles typically worked in a "Pod"[2] during twelve hour shifts. (Doc. 3 ¶ 16). Within Battles's first few days on the job, he was subjected to unwelcome sexual harassment by Officer Eleasure Griggs, an African-American female. (Doc. 3 ¶ 17). Officer Griggs came to Battles's Pod to train him, but instead she rubbed him on his leg and told him that

---

[1]At this stage of the proceedings, for purposes of ruling on the motion to dismiss, the facts alleged in the complaint and reasonable inferences to be drawn therefrom are set forth in the light most favorable to the plaintiff. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

[2]The complaint does not define the term "Pod."

3

they were going to watch a movie. (Doc. 3 ¶ 17).  She then began watching a movie with graphically depicted nudity, sex, and rape scenes.  (Doc. 3 ¶ 17).  Shortly thereafter, in February 2011, Battles complained of the sexual harassment to his supervisor, Staff Sgt. Greg Thomas, an African-American male who serves as the Assistant Administrator of the Jail. (Doc. 3 ¶ 18).  Thomas informed Battles that "they had stopped employees from doing this before and it looked like they would have to stop them again."  (Doc. 3 ¶ 18).

Thereafter, and throughout his employment, Battles observed several of the jail employees acting in a sexually inappropriate manner with inmates and with each other. (Doc. 3 ¶¶ 19-24).   For example, Battles observed Officer Elizabeth Powell kiss Sgt. David Walters in the jail parking lot. (Doc. 3 ¶ 21).  Battles also heard Officer Powell state that she was being sexually harassed by Sgt. David Walters and by Staff Sgt. Greg Thomas.  (Doc. 3 ¶ 21).  Additionally, Battles observed several specific incidents of sexual harassment of inmates by guards and was "aware of" inappropriate sexual conduct between certain guards and inmates. (Doc. 3 ¶ 23).  Battles confiscated a sexually explicit note being delivered by Officer Senter Thomas from a male prisoner to a female prisoner.  (Doc. 3 ¶ 24).  The inmates informed Battles that Thomas was regularly a courier for such notes.  (Doc. 3 ¶ 24).

Battles was subjected to acts of retaliation for complaining that Officer Griggs had sexually harassed him.  (Doc. 3 ¶ 25).  He was no longer allowed to take breaks during his twelve-hour shifts and no one would relieve him from his station.  (Doc. 3 ¶ 26).  No one answered his radio calls for back-up or relief, even when he placed urgent calls about inmate

4

contraband or potentially dangerous situations. (Doc. 3 ¶ 28). Battles complained to his supervisor, Sgt. Pierce Moore, about the lack of breaks, relief, and back-up, but Moore refused to assist him. (Doc. 3 ¶ 27). Instead, Moore told Battles to "just leave things alone" and that Battles did not know what he was getting himself into. (Doc. 3 ¶ 27).

Battles alleges that, while working at the jail, his supervisors subjected him to racially discriminatory discipline and that similarly-situated African-American employees were not disciplined for engaging in similar conduct.[3] (Doc. 3 ¶ 30).

In June, 2011, Battles still had not received any response to his initial complaint of sexual harassment against Griggs or to any of his other subsequent complaints. (Doc. 3 ¶ 31). Battles requested and finally received permission from Sgt. Pierce Moore to talk directly to Chief Deputy Steve O'Steen about the matter. (Doc. 3 ¶ 31). On June 24, 2011, Battles complained to Chief Deputy O'Steen about incidents of sexual harassment and racial discrimination going on at the jail, about the incident when Officer Griggs sexually harassed him, and about the ongoing retaliatory acts to which he was being subjected. (Doc. 3 ¶ 32). Battles also told Chief Deputy O'Steen that Officer Elizabeth Powell had been sexually harassed by other officers. (Doc. 3 ¶ 32). O'Steen told Battles that he would inform Russell County Sheriff Heath Taylor of these matters and they would investigate the matter and then contact him about the results of the investigation. (Doc. 3 ¶ 33). However, Battles did not hear back from the O'Steen or anyone else about the matter. (Doc. 3 ¶ 33).

---

[3] With respect to the allegation of racially-discriminatory discipline, the complaint does not clearly specify the nature of the alleged misconduct or the type of discipline Battles received.

In August, 2011, Battles asked Officer Griggs to come to the Pod to relieve him so that he could take a break. (Doc. 3 ¶ 34).  She refused, stating that she would not come within ten feet of him since he had filed his sexual harassment complaint.  (Doc. 3 ¶ 34).

On or about October 4, 2011, Battles complained to Sgt. David Walters that he was being retaliated against because he was no longer being allowed to take breaks during twelve-hour work shifts while other officers were allowed relief and breaks. (Doc. 3 ¶ 36).  Because of his complaint, on October 6, 2011, Battles was "written up" by Sgt. Walters and suspended for five days by Sgt. Walters, Staff Sgt. Greg Thomas and Lieutenant Loretta Holland-Leonard for alleged "insubordination."  (Doc. 3 ¶ 36).

In November 2011, Battles reported the ongoing sexual harassment and racial discrimination directly to Sheriff Taylor, and he told Sheriff Taylor about Officer Senter Thomas passing of sexually explicit notes between inmates.  (Doc. 3 ¶ 37).

By November, 2011, Battles still had not received any feedback about the status of his complaints of a sexually and retaliatory hostile work environment or of race discrimination. (Doc. 3 ¶ 38).  He discussed his complaints with a co-worker, Deputy Lovett. (Doc. 3 ¶ 38).  Thereafter, Battles was targeted for discipline and became the subject of an internal investigation.  (Doc. 3 ¶ 39).  On November 29, 2011, Battles was subjected to disciplinary counseling by Staff Sgt. Greg Thomas, Sgt. Pierce Moore and Lt. Loretta Holland for his complaints of sexual harassment. (Doc. 3 ¶ 39).  They threatened Battles with suspension or termination if he brought up sexual harassment complaints anymore. (Doc. 3

¶ 39). Sgt. Moore told him: "You need to leave this alone; you don't know what you are getting into." (Doc. 3 ¶ 39). During the November 29, 2011, disciplinary counseling Battles was informed, for the first time, of the status of his initial sexual harassment complaint regarding Officer Griggs. (Doc. 3 ¶ 40). His other complaints of an ongoing sexually hostile work environment, race discrimination, and retaliation were not addressed. (Doc. 3 ¶ 40). After November 29, 2011, the retaliatory hostile environment escalated when Sgt. Pierce Moore no longer allowed Battles to have any food or beverage in the Pod during his twelve-hour shifts. (Doc. 3 ¶ 41).

In February 2012, Battles submitted an Intake Questionnaire to the Equal Employment Opportunity Commission ("E.E.O.C.") in which he complained of age discrimination, race discrimination and retaliation. (Doc. 3 ¶ 42). He also submitted a copy of the E.E.O.C. questionnaire and a typed complaint to the sheriff's department. (Doc. 3 ¶ 42). Shortly thereafter, Battles was called into a meeting with Chief Deputy William Alexander, Lt. Loretta Holland, Staff Sgt. Greg Thomas and Investigator Castillo about his letters of complaint to the sheriff. (Doc. 3 ¶ 43). However, the meeting did not focus on Battles's complaints; instead he was treated like a criminal suspect and informed that he was under investigation. (Doc. 3 ¶ 43). During the meeting, Chief Deputy William Alexander asked Battles twice if he wanted to "go ahead and resign." (Doc. 3 ¶ 43). Battles replied that he did not. (Doc. 3 ¶ 44). Battles again complained of the retaliatory measure that he was only allowed to work in the Pod on twelve-hour shifts with no breaks while other Officers rotated

assignments and were allowed breaks. (Doc. 3 ¶ 45). Battles complained that the retaliatory environment was intolerable.  (Doc. 3 ¶ 45).

After the February, 2012, meeting, Sheriff Taylor asked Battles for the original inmate letter containing sexually inappropriate content that Battles had confiscated from Officer Senter Thomas. (Doc. 3 ¶ 46).  Sheriff Taylor told Battles that, if he did not provide the note, Sheriff Taylor would issue a warrant to search Battles's house and he would arrest Battles for hindering a criminal investigation. (Doc. 3 ¶ 46).  In response, Battles took the requested inmate letter to Chief Deputy William Alexander.  (Doc. 3 ¶ 47).  Alexander again asked Battles whether or not he was resigning. (Doc. 3 ¶ 47). Battles replied that he was not resigning and intended to work. (Doc. 3 ¶ 47).  Alexander repeatedly asked Battles to resign at least 5-6 times.  (Doc. 3 ¶ 47).  Battles refused.  (Doc. 3 ¶ 47).

In late February, 2012, the retaliation and hostile environment escalated when Battles's radio/scanner was removed from his Pod.  (Doc. 3 ¶ 48).  As a result, the only communication source he had while working in the Pod was the intercom, which only interacted with the Central Office.  (Doc. 3 ¶ 48).  Battles no longer had any direct communication access to the sergeant or other officers on duty.  (Doc. 3 ¶ 48).  If any form of emergency or potentially dangerous situation occurred in the Jail, Battles had only a very ineffectual way to call for assistance to otherwise alert the jail staff. (Doc. 3 ¶ 48).  Battles was concerned that the removal of his radio/scanner compromised his personal safety, as well as the safety of the inmates and the other jail staff.  (Doc. 3 ¶ 48).

8

On or about March 2, 2012, Battles resigned because he could no longer physically or emotionally endure the work environment.  (Doc. 3 ¶ 49).

### III. DISCUSSION

On April 1, 2013, Battles filed a complaint in this court alleging employment discrimination claims against Russell County, the Russell County Commission, and other defendants.  (Doc. 1).  On June 20, 2013, Russell County and the Russell County Commission ("the Russell County Defendants") moved to dismiss Battles's claims against them for failure to state a claim upon which relief can be granted.  (Doc. 13).  The Russell County Defendants argue that they cannot be held liable for Battles's employment discrimination claims because, as a matter of law, they did not employ Battles, and the Russell County sheriff was not acting as their agent in exercising control over Russell County Jail employees.  (Doc. 13).

**A.      42 U.S.C. § 1983 Claims Against the Russell County Defendants**

Battles alleges that, in the course of his employment at the jail, the Russell County Defendants violated 42 U.S.C. § 1983[4] by subjecting him to racial discrimination, sexual

---

[4]Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

harassment, retaliation, and a hostile work environment, thereby depriving him of the rights secured by the Fourteenth Amendment and 42 U.S.C. § 1981 under color of state law. (Doc. 3 ¶¶ 112-145, 161-194; Doc. 18 p. 3 n.2).  "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'"  *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)).  A county may be liable for policies  "set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official [county] policy," *i.e.*, "'those officials or governmental bodies who speak with final policymaking authority for the [county] concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784 (1997) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978), 436 U.S. at 694; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

In his complaint, Battles alleges that he was employed jointly by the Russell County sheriff and the Russell County Defendants and that his salary was paid directly from funds of the Russell County Defendants.  (Doc. 3 ¶ 50).  Battles also alleges that, "[u]pon information and belief, the Russell County Commission was responsible for making and enforcing, and did make and enforce, employment and personnel decisions and/or policies regarding the terms, benefits and employment policies and/or procedures with regard to Plaintiff and other Russell County Jail employees."  (Doc. 3 ¶ 51). Alternatively, Battles

alleges that the Russell County sheriff acted as the "final policymaking authority" for the Russell County Defendants in hiring, supervising, and setting policy for jail employees. Battles argues that, for purposes of the motion to dismiss, the court must assume the truth of these allegations. Battles contends that, if these allegations are taken as true, his complaint fairly states a claim that the Russell County Defendants have final policymaking authority for the acts and omissions alleged in the complaint and, therefore, they can be held liable for those acts and omissions under § 1983.

The tenet that, in considering a motion to dismiss, "the court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Eleventh Circuit has noted that, as a matter of law, "[t]he Alabama Supreme Court has dispelled" the theory that the county and the sheriff operate a jail in partnership "by holding that the authority of the sheriff over operation of the jail is 'totally independent' of the county commission." *Turquitt*, 137 F.3d at 1290 (citing *King v. Colbert County*, 620 So.2d 623, 625 (Ala.1993)). The sheriff of Russell County is a constitutionally established executive officer of the State of Alabama. *King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993) (citing Ala. Const.1901, Art. V, § 112, § 138). "The sheriff appoints, directs, and controls the deputies and jailers who work at the [county] jail" and "[t]he [c]ounty has no authority to manage the sheriff's employees." *Turquitt*, 137 F.3d at 1289 (citing Ala.Code § 14-6-105; *Lockridge v. Etowah County Comm'n*, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); *Terry v. Cook*, 866 F.2d 373, 379 (11th Cir.1989)). Thus,

11

"[u]nder the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself." *Id.* at 1289; *see* Ala. Code 14-6-1 ("The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.").

The fact that the county is required by statute to fund the operations of the jail, *Turquitt*, 137 F.3d at 1289, including the payment of the salaries of jail personnel, *id.* at 1290, does not translate into control by the county over the sheriff, jail operations, or jail employees. *See id.* at 1290; Ala. Code 1975 § 14-6-105 ("The sheriff, in case of a county jail . . . shall appoint, direct and control said deputy, [night] watchman or guard, and the county commission . . . shall fix a reasonable salary and the same shall be paid out of the funds of the county . . . in which the jail is located.").  Therefore, even if the county did in fact provide the funds that paid Battles's salary, that fact does not create a genuine issue as to whether Battles was employed or controlled by the Russell County Defendants rather than, or in a partnership or agency relationship arrangement with, the Russell County sheriff.

Accordingly, under Alabama law, the sheriff, not the county, is entrusted by law with the operation and management of the county jail, including the hiring, firing, supervision, and

12

management of jail employees. *See Turquitt*, 137 F.3d at 1288-90 (holding that, because the sheriff's authority over management of the jail and jail employees was "totally independent" of the county, the county was not liable for a § 1983 claim that it failed to "adequately staff, train, and supervise [jail] employees"); *see also* Ala. Code 1975 § 14-6-1; Ala. Code 1974 § 14-6-105; *Parker v. Amerson*, 519 So. 2d 442, 446 (Ala. 1987) (holding that a sheriff is a state officer, not an employee of the county, and therefore immune from suit for negligent hiring of a jailer).

Battles argues that cases such as *McMillian*, 520 U.S. 781, and *Turquitt*, 137 F. 3d 1285, are not controlling because those cases considered the roles of sheriffs and local governments in Alabama counties other than Russell County.  This argument is particularly unpersuasive in light of the fact that *McMillian* and *Turquitt* rely on both general Alabama state law and on cases dealing with other counties.  *See McMillian*, 520 U.S. 781 (considering, in a case against Monroe County, Alabama, and the Monroe County sheriff, such authorities as the Alabama Constitution, Alabama statutory law and Alabama cases such as *Parker*, 519 So. 2d 442 (answering a certified question in a case against the Macon County, Alabama, and the Macon County sheriff) and  *Etowah County Comm'n v. Hayes*, 569 So.2d 397, 399 (Ala. 1990)); *Turquitt*, 137 F. 3d 1285 (considering, in a case against the sheriff of Jefferson County, Alabama, authorities such as Alabama state constitutional and statutory law, *McMillian, King v. Colbert County,* 620 So. 2d 623, 625 (Ala. 1993), and *Lockridge v. Etowah County Comm'n*, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984)).

Clearly, *McMillian* and *Turquitt* demonstrate the propriety of looking to positive pronouncements of Alabama state law, including cases applying Alabama law to claims against sheriffs and governing bodies of counties other than the one before the court. *See McMillian*, 520 U.S. at 786 ("[O]ur inquiry is dependent on an analysis of state law.").

Nevertheless, Battles argues that he is entitled to conduct discovery on the relationship between the Russell County sheriff and the Russell County Defendants with respect to jail employees because, in *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995), "the Eleventh Circuit . . . recognized that within [Alabama] a county and commission's policymaking authority over a sheriff may vary from county to county, despite the broad State law." (Doc. 18 p. 6). In *Welch*, an Eleventh Circuit panel determined that the plaintiff, a former dispatcher for the Cullman County sheriff's department, could pursue a § 1983 claim against the Cullman County Commission for gender discrimination in setting her pay. The court relied on *Parker v. Williams*, 862 F.2d 1471, 1480 (11th Cir.1989) (which was subsequently overruled *by Turquitt*, 137 F. 3d 1285), in which the Eleventh Circuit held that "a county [may be] liable under § 1983 for the personnel decisions of a sheriff where the sheriff acted as the 'ultimate repository of county authority.'" *Welch*, 57 F.3d at 1009. To the extent that *Welch* recognized that a county and commission's policymaking authority over a sheriff may vary from county to county, the court recognized that, *under a local Alabama act*,[5] the Cullman County Commission did have the legal authority to set ranges of compensation for county

---

[5] 1980 Ala. Acts Act 80-549, p. 851, § 5, now codified at Ala. Code 1975 § 45-22-120.04.

14

employees, including the employees of the Cullman County sheriff's department; therefore, the Cullman County Commission could have delegated that authority to the Cullman County sheriff, making him the "ultimate repository" of the county's authority to set salaries. *Id*. at 1009-10.

Although a local law provided the Cullman County Commission legal authority to determine or delegate the allegedly discriminatory pay scales at issue in *Welch*, Battles points to no law that confers any authority upon the Russell County Defendants to control employees of the Russell County Jail, to set policies and procedures for handling harassment complaints, to exercise authority over the operation of the jail with respect to any of the discriminatory acts or omissions alleged in the complaint, or to delegate any such authority to the sheriff. As the Eleventh Circuit held in *Turquitt* when it overruled *Parker*, the Alabama Code, not the individual county government, vests the sheriff with control over the operation of the jail, including the employees of the jail, and that authority is "totally independent of the county commission." *Turquitt*, 137 F.3d at 1290 (citing Ala. Code § 14-6-1); *see also* Ala. Code 14-6-105. Further, as the court expressly noted in *Welch*, where "the county had no [legal] authority to delegate to the sheriff" regarding the hiring and firing of employees, the sheriff "could not have been acting as the ultimate repository of county authority" in those matters. *Welch*, 57 F.3d at 1010 (distinguishing *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989)). *Cf. Turquitt*, 137 F.3d at 1289 ("[T]he Alabama courts [have] assumed as a matter of statutory construction that an express legislative delegation of authority to one

official, the sheriff, necessarily meant that another entity, the county, possessed no authority in that area."); *Ex parte Sumter County*,  953 So. 2d 1235, 1238 (Ala. 2006) (citing *Crocker v. Shelby County*, 604 So.2d 350 (Ala.1992)) ("In Alabama, counties possess only those powers expressly delegated to them by the legislature. Therefore, the Alabama Code determines the role of counties in operating county jails." (citation omitted)); *Lockridge*, 460 So. 2d at 1363 ("A county is an instrumentality of the state of Alabama and is authorized to do only those things permitted or directed by the legislature of Alabama.  We are unable to find any authority, nor have we been cited to any, for the Etowah County Commission to promulgate work rules for the employees of the sheriff's office . . . . In the absence of such authority, we are constrained to hold that the Etowah County Commission has no power to grant leaves of absence to the sheriff's deputies. The sheriff is the only official who has such authority.").

        "The federal judiciary must respect state and local law's allocation of policymaking authority, and not assume that final policymaking authority lies in some entity other than that in which state law places it." *Turquitt*, 137 F.3d at 1288 (citations and internal quotation marks omitted).  Battles has cited no law that could create an exception for Russell County from the general rule in Alabama that neither the county nor the county commission has authority over the hiring, firing, or supervision of the jail staff.  *See Sumter County*, 953 So.2d at 1238 ("Alabama law provides that a county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's

16

office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees." (citing *Crocker*, 604 So. 2d 350). *Turquitt*, 137 F.3d at 129 ("The [c]ounty has no authority to manage the sheriff's employees." (citing Ala. Code § 14-6-1)). No amount of discovery will change the relevant state law that defines the functions of the Russell County Defendants and the Russell County sheriff with respect to management of jail employees. Therefore, the court finds no merit in Battles's argument that he is entitled to conduct discovery on whether, in practice, the Russell County Defendants exercise authority over Russell County Jail personnel and whether the Russell County Defendants delegate or share that authority with the Russell County sheriff.

"Where a duty is specifically placed upon the sheriff, that duty is 'statutorily reserved' for the sheriff, and the county has no liability for the sheriff's failure to perform it." *Turquitt*, 137 F.3d at 1290. Therefore, the Russell County Defendants cannot be held liable under § 1983 because, as a matter of law, they do not have any legal authority over the employment policies and personnel decisions at the Russell County Jail, nor does the sheriff act as the agent or final policymaking authority for the county in supervising and setting policy for jail personnel. *See id*. at 1288 ("[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail.").

**B.    Title VII Claims Against the Russell County Defendants**

Battles alleges that, in the course of his employment at the jail, the Russell County Defendants subjected him to racially-motivated discrimination, retaliation, and a hostile work

environment in violation of Title VII.  (Doc. 3 ¶¶ 97-111, 146-160).  Under Title VII[6], it is

"an unlawful employment practice for an *employer* . . .  to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race."  42 U.S.C.A.

§ 2000e-2(a)(1) (emphasis added).   As Battles points out, for purposes of Title VII, a

particular defendant's status as the plaintiff's "employer" is dependant upon "the economic

realities of the relationship viewed in light of the common law principles of agency and the

right of the employer to control the employee that are determinative."  *Cobb v. Sun Papers,*

*Inc.*, 673 F.2d 337, 341 (Ala. 1982); *see also Burlington Indus. v. Ellith*, 524 U.S. 742, 744-

45 (1988) ("Congress has directed federal courts to interpret Title VII based on agency

principles. . . . . We rely on the general common law of agency, rather than on the law of any

particular State, to give meaning to these terms." (citations and internal quotation marks

omitted)).  As explained in *Burlington*, common law agency liability concerns the liability

of "a master . . . for the torts of his servants."  524 U.S. at 756, 758.  As explained in Part III.

A. of this memorandum opinion, with respect to the hiring, supervision, and control of jail

employees, the sheriff is the agent of the state, not the county; he exercises his authority over

---

[6]As Battles points out, the Russell Count Defendants' motion to dismiss (Doc. 13) does not expressly reference Title VII.  However, as Battles recognizes, his employment discrimination claims require him to demonstrate that he was an employee of the Russell County Defendants or that the Russell County sheriff acted as the agent of the Russell County Defendants with respect to the discriminatory acts alleged in the complaint.  (Doc. 18; Doc. 3 ¶¶ 8-9).  In his response to the Russell County Defendants' motion to dismiss, Battles specifically addressed the issue of his employer's identity and the sheriff's agency status with respect to his Title VII claims as well as his claims under 42 U.S.C. §§ 1981 and 1983, and the court has considered those arguments.

jail employees completely independently of the county commission, and the county and county commission have no legal authority to hire, fire, supervise, or control those employees or to direct the sheriff in those matters.   Thus, the Russell County Defendants are not "masters" of the sheriff or the jail employees for purposes of common law rules of agency. Moreover, the "economic realit[y] of the relationship," whereby the county is responsible for funding the salaries of the sheriff and jail employees, "does not translate into control" by the county over the sheriff or jail employees.  *Turquitt*, 137 F. 3d at 1290; *see also McMillian*, 520 U.S. at 791 ("The county's payment of the sheriff's salary does not translate into control over him.").  Thus, as a matter of law, even assuming the factual allegations in the complaint are true, "the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee," *Cobb*, 673 F.2d at 341, establish that the Russell County Defendants are not "employers" within the meaning of Title VII.

Nevertheless, Battles argues that the liability of the Russell County Defendants for the actions of the Russell County sheriff in operating the jail is necessarily an issue of fact for the jury.   Battles argues that, in *Sims v. Montgomery County Comm'n*, 766 F. Supp 1052, 1075-76 (1990), "the district court found after a review of the factual evidence in the case that the Montgomery County Sheriff Department was bound by the harassment discrimination policies and provisions of a [employee handbook] published by the Montgomery County Commission and provisions in the Rules and Regulations of the

Montgomery City-County Personnel Board" and that "employees of the Sheriff's Department were to seek help from the Montgomery County Administrator by filing a complaint with the Montgomery City-County Personnel Board." (Doc. 18 pp. 6-7).   However, in *Sims*, the district court did *not* hold that the Montgomery County sheriff was bound by the county's employee handbook and rules, or that the county personnel board had any authority over grievances of sheriff's department employees.   *See* 766 F. Supp. at 1076 ("Counsel for the department notes that the County Employee Handbook and the Rules and Regulations of the City–County Personnel Board together prohibit sexual harassment. The evidence reflects, however, that the Sheriff's Department has not viewed these prohibitory provisions as applying to it. . . . . *[I]t is open to serious question*[7] *whether these prohibitory provisions even apply to the Sheriff's Department*. The testimony at trial indicated that, because the sheriff of the county is a constitutionally elected official, his department is somewhat autonomous and, thus, *the authority of the County Commission and the City–County Personnel Board probably does not extend over grievance matters in the Sheriff's Department*." (emphasis added)); *id.* at 1077 ("The [Montgomery County Administrator's] authority is limited to mediation; he does not have authority to resolve complaints of discrimination. . . . Finally, the City–County Personnel Board is not a means of review."). Battles's reliance on *Sims* is unavailing.

In support of his argument that the liability of the Russell County Defendants is

---

[7][This court notes that *Sims* was decided before *Turquitt*, 137 F.3d at 1288, in which the Eleventh Circuit expressly recognized that "[t]he County has no authority to manage the sheriff's employees."].

necessarily an issue of fact for the jury, Battles also cites *Bristol v. Bd. of County Comm'rs of Clear Creek*, 281 F.3d 1148, 2002 WL 265824[8] (10th Cir. Feb. 26, 2002).  In *Bristol*, 281 F.3d 1148, a Tenth Circuit panel held that the county's status as the plaintiff's employer was inherently an issue of fact that could not be determined as a matter of law.  281 F. 3d at 1165 ("In this circuit, determining whether an entity qualifies as an employer is a fact issue for the jury . . . .  To the extent that the district court couched its ruling 'as a matter of law' based on an implicit conclusion that no reasonable jury could deny the County's employer status . . .  that conclusion was erroneous." (citations omitted)).  However, Battles neglects to mention that the Tenth Circuit panel decision in *Bristol* is no longer good law with respect to the cited proposition.  On rehearing *en banc*, the Tenth Circuit vacated the panel decision in part and held that, as a general rule, determining whether an entity qualifies as an employer is a fact issue for the jury; however, judgment as a matter of law *is* appropriate where there exists no legally sufficient basis for finding that a defendant qualifies as an employer.  *Bristol v. Bd. of County Comm'rs of Clear Creek*, 312 F.3d 1213, 1221 (10th Cir. Dec. 12, 2002).  The Tenth Circuit concluded on rehearing that, as a matter of law, "[b]ecause the Board of County Commissioners has no control over the sheriff's employees, the Board is not liable for negligent acts of the Sheriff's employees."  312 F.3d at 1219.  Similarly, the Russell County Defendants have no authority to exercise control over jail employees; therefore, they are not "employers" for purposes of Title VII liability in this case.

---

[8]Battles identifies *Bristol* only by its Westlaw citation, which corresponds to the Feb. 26, 2002, Tenth Circuit panel decision.

Accordingly, the court concludes that, as a matter of law, the Russell County Defendants are not "employers" within the definition of Title VII; therefore, Battles's Title VII claims against the Russell County Defendants are due to be dismissed.

## C.    Rule 19 Joinder

Under Rule 19, Fed. R. Civ. P.,

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties.

Fed. R. Civ. P. 19(a)(1).

Battles argues that, even if the Russell County Defendants are not subject to liability for his federal claims, they must be joined under Rule 19(a)(1).  Battles cites *Manley v. Mobile County*, 441 F. Supp. 1351 (S.D. Ala. 1977), in which the district court found that the county's statutory responsibility to provide a "the Sheriff with such quarters, supplies, and equipment as are reasonably necessary for the operation of his office" established a "sufficient nexus between defendant Mobile County and the County Sheriff's Department to warrant [the County's] inclusion as a Title VII 'employer'" in a suit alleging gender discrimination in the hiring of jail employees.  441 F. Supp. at 1355.  *Manley* does not address the applicability of Rule 19 in the absence of a viable legal claim against the Russell County Defendants.  With respect to county government liability, *Manley* is concerned with the definition of an "employer" under Title VII. Further, in view of the numerous cases that have been decided since *Manley* regarding the relationship of Alabama counties to their

22

sheriffs' departments and their county jails, this court does not agree with the Title VII analysis set forth in *Manley*.[9]

In support of his argument that the Russell County Defendants "must" be joined under Rule 19 so that complete relief can be afforded among the parties, Battles also cites another case that is not concerned with Rule 19: *Keene v. Pryne*, 477 Fed. Appx. 575 (11th Cir. 2012). (Doc. 3 p. 3 n. 1). In *Keene,* an Eleventh Circuit panel held that a Georgia sheriff and Georgia county were not entitled to Eleventh Amendment immunity from age and gender employment discrimination claims because, under Georgia state law, "when [the sheriff] made the personnel decisions at issue," he was not acting as an "arm of the state." *Keene* is distinguishable not only because it fails to address the propriety of joining defendants under Rule 19 in the absence of a viable legal claims against them, but also because the Georgia state law on which the court based its rationale is not necessarily comparable to Alabama law. *See, e.g.*, *Keene*, 477 F.3d. at 577-78 ("By virtue of their offices, [Georgia] sheriffs are jailers of the counties and have the authority to appoint other jailers, subject to

---

[9] In particular, the court notes that *Manley* was decided over twenty years before *Turquitt*, 137 F.3d at 1291, in which the Eleventh Circuit expressly held that, "while [Alabama] counties have certain responsibilities with respect to county jails, those responsibilities are clearly enumerated in the statute and relate only to maintaining the jail's physical plant and providing operational funding." The county's responsibility to "provide the [s]heriff with such quarters, supplies, and equipment as are reasonably necessary for the operation of his office," *Manley* at 1355, does not translate into a role for the county as employer or principal with respect to the hiring and supervision of jail personnel. *Turquitt*, 137 F.3d 1285.

The court also notes that, in *Bristol v. Bd. of County Comm'rs of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. Dec. 12, 2002), vacating on rehearing a case relied upon by Battles, the court expressly declined to treat *Manley* as persuasive authority, and instead held that a Colorado county board of commissioners' "[b]udgetary power" to "adopt an overall budget for all County officials, including Sheriffs," did not, "in and of itself, . . . establish the control necessary to treat the Sheriff and the Board as joint employers" under Title VII.

the supervision of the county governing authority, as prescribed by law." (citing O.C.GA. § 42-4-1(a))).

Battles also argues that, in the event that he is awarded injunctive relief, the Russell County Defendants will be responsible for implementing new employment policies for the Russell County sheriff. He cites no authority for this contention, and, as explained previously in this memorandum opinion, no such authority exists because the sheriff operates independently of the county in the hiring and supervision of jail employees. *Turquitt*, 137 F. 3d 1285.

In sum, Battles has not cited any authority as to why, when no viable claim is pending against the Russell County Defendants, complete relief cannot be afforded among the parties in their absence. *See* Fed. R. Civ. P. 19(a)(1). *Cf. McMillian*, 520 U.S. at 791 (recognizing that, under Alabama law, the county's discretion to deny operating funds to the sheriff is limited to the denial of funds beyond what is "reasonably necessary"). Accordingly, the court finds no basis in Rule 19 to require the Russell County Defendants to remain as parties in this lawsuit. Dismissal of the Russell County Defendants is appropriate.

## CONCLUSION

The court's consideration and discussion of the motion to dismiss has been extended unnecessarily by Battles' reliance on arguments and case law which plainly have been abrogated or called into question by subsequent developments in the law. Battles' failure to advise the court of these problems undermines the credibility of the advocacy advanced

through his counsel.  While the court always appreciates forceful and competent advocacy,

that advocacy must be tempered by the professional responsibility which requires candor

toward the court in the presentation of legal arguments.  Unfortunately, that was lacking in

this case.

Accordingly, it is

**ORDERED** that the motion to dismiss (Doc. 13) filed by Defendants Russell County,

Alabama, and the Russell County Commission be and is hereby **GRANTED**.  Further, it is

**ORDERED** that Battles's claims against  Defendants Russell County, Alabama, and

the Russell County Commission, be and are hereby **DISMISSED** with prejudice.  Further,

it is **ORDERED** that Defendants Russell County, Alabama, and the Russell County

Commission be and are hereby **DISMISSED** from this case.

Done this 7th day of August, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

25